UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN A. PUGLIESE, ET AL.,

       Plaintiffs,

v.

PROFESSIONAL RECOVERY SERVICE,
INC., ET AL.,

       Defendants.

_____/

Case No. 09-12262

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT [52] AND TO STRIKE[68]

This action arises from Defendants Professional Recovery Services, Inc., ("PRS")'s and 14 PRS employees' (hereinafter collectively referred to as "Defendants") attempt to collect a debt from Plaintiffs Martin and Pamela Pugliese. Plaintiffs' second amended complaint ("complaint") alleges: (1) Defendants violated the Fair Debt Collection Practices Act ("FDCPA), 15 U.S.C. § 1692, addressing debt collection practices, and are seeking actual damages (§ 1692k(a)(1)), statutory damages (§ 1692k(a)(2)(A)), and reasonable attorney fees and costs (§ 1692k(a)(3)); (2) a state-law claim of invasion of privacy; (3) Defendants violated the Michigan Occupational Code, Mich. Comp. Laws § 339.901(b); (4) Defendants violated the Michigan Collection Practices Act ("MCPA"), Mich. Comp. Laws § 445.251(g)(xi); (5) Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq., and are seeking actual damages, statutory damages

up to $ 500 for each violation (§ 227(c)(5)(B)), and reasonable attorney fees and costs; and (6) a state-law claim for intentional infliction of emotional distress.

This matter comes before the Court on Defendants' motion for partial summary judgment brought pursuant to Federal Rule of Civil Procedure 56. Defendants seek summary judgment on Plaintiffs' claims for: (1) violation of the TCPA, 47 U.S.C. § 227; (2) violation of the FDCPA, 15 U.S.C. §1692d(5); (3) violation of the MCPA, Mich. Comp. Laws 445.251; (4) intentional infliction of emotional distress under Michigan law; (5) actual damages under the TCPA and the FDCPA; and (6) violations of §§ 1692d, 1692e, and 1692f of the FDCPA based on alleged calls on July 2, July 5, July 13, July 20, July 25, September 12, September 29 and October 23, 2008. For the reasons stated below, this Court GRANTS Defendants' motion for partial summary judgment.

On May 27, 2010, Defendants also filed a motion to strike Plaintiffs' Response Exhibits 1 and 2. Exhibit 1 consists of a newly created call log and a supporting affidavit from Plaintiff Martin Pugliese. Exhibit 2 is an affidavit from Rachel Livingston. The Court GRANTS Defendants' motion to strike.

I.    **Facts**

Plaintiffs Martin A. Pugliese and his wife Pamela J. Pugliese reside in the City of Metamora, Lapeer County, Michigan. (2d Am. Compl. ¶¶ 4 – 5). Defendant PRS is New Jersey Corporation whose primary business involves debt collection. (*Id.* at ¶ 6). The fourteen additional Defendants are currently, or have been previously, employed with PRS as debt collectors. (*Id.* at ¶¶ 7-20).

In 2007, Plaintiff Martin Pugliese incurred a debt through his Washington Mutual charge card in an approximate amount of $ 2,542.68. This debt was incurred via purchases

made for personal and home use though an HSBC Bank line of credit. (2d Am. Compl. ¶ 21). In June of 2008, after Plaintiff had defaulted on payments for his charge card, HSBC Bank referred Plaintiff's account to PRS for collection. (*Id.* at ¶ 22). There is no dispute that the debt belongs to the Plaintiff and that he has failed to pay it. (Pls.' Resp. at 3).

From June 2008 to February 2009, PRS claims that there were approximately 350 calls placed to the Plaintiffs.[1] There appears to be a discrepancy as to the number of actual "contacts" made. A "contact" occurs when Defendants actually conversed on the phone with one of the Plaintiffs. Calls made to Plaintiffs but unanswered are identified as "attempts." (Stearn Dep., Vol. 2 at 68-70). A majority of the attempts by PRS to contact Plaintiffs were instituted by automated-machine dials. PRS still classifies "contact" with a debtor when an automated machine dialer is able to reach the plaintiff - this does not include reaching an answering machine. (*Id.*) Defendants contend that from June 2008 until October 2008, PRS was only able to contact Plaintiffs six times. (Defs.' Mot. at 2). Then, from the end of October 2008 until February 26, 2009, PRS contacted Plaintiffs one time. (*Id.*). Mr. Pugliese claims that he had approximately eight to ten conversations with PRS employees from June 2008 until February 2009. Mrs. Pugliese also claims that during this time period she had numerous conversations with the debt collectors where she urged PRS to stop trying to reach Mr. Pugliese and to only contact her.

Defendants' debt collection practices began on June 17, 2008 and continued until February 26, 2009. The alleged calls and statutory violations are as follows:

---

[1] The records from PRS indicate that there were approximately 341 calls made plus a possible 43 more in the access base. (Stearn Dep., Vol. 2 at 64-65.) Plaintiffs also admit that they were not able to record or detail every single call; this explains the lower number of calls recorded by the Plaintiffs as opposed to Defendant's account records. (*See* Pls.' Resp. at 4.)

| | |
|---|---|
| <u>June 17, 2008:</u> | False and deceptive (§ 1692e) |
| | Harassing/ oppressive and abusive (§ 1692d) |
| | Unfair practices (§ 1692f) |
| <u>June 23, 2008:</u> | §§ 1692d, e, and f (See above) |
| <u>June 2008:</u>[3] | Violations of the FDCPA and TCPA |
| <u>July 2, 2008:</u> | Violations of the FDCPA |
| <u>July 5, 2008:</u> | Violations of the FDCPA |
| <u>July 13, 2008:</u> | Violations of the FDCPA |
| <u>July 14, 2008:</u> | Violations of the FDCPA |
| <u>July 15, 2008:</u> | Violations of the FDCPA |
| <u>July 18, 2008:</u> | Violations of the FDCPA |
| <u>July 20, 2008:</u> | Violations of the FDCPA |
| <u>July 25, 2008:</u> | Violations of the FDCPA |
| <u>July 2008:</u>[4] | Violations of the FDCPA |
| <u>August 2008:</u>[5] | Violations of the FDCPA and TCPA |
| <u>September 9, 2008:</u> | Violations of the FDCPA |
| <u>September 12, 2008:</u> | Violations of the FDCPA |
| <u>September 29, 2008:</u> | Violations of the FDCPA |
| <u>October 23, 2008:</u> | Violations of the FDCPA |
| <u>October 2008:</u>[6] | Violations of the TCPA |
| <u>November 2008:</u>[7] | Violations of the FDCPA and TCPA |
| <u>December 24, 2008:</u> | Violations of the FDCPA and TCPA |
| <u>December 2008:</u>[8] | Violations of the FDCPA and TCPA |
| <u>January 2009:</u>[9] | Violations of the FDCPA and TCPA |

---

[3]Additional calls for June 2008 that were not specifically named in the complaint.

[4]Additional calls for July 2008 that were not specifically named in the complaint.

[5]Calls in August 2008 that are not specifically named in the complaint.

[6]Additional calls for October 2008 that were not specifically name in the complaint.

[7]Calls in November 2008 are not specifically named in the complaint.

[8]Additional calls for December 2008 that were not specifically named in the complaint.

[9]Calls in January 2009 are not specifically named in the complaint.

<u>February 2009:</u>[10]     Violations of the FDCPA and TCPA

Beginning in June 2008, the calls from PRS were placed to Plaintiffs' home telephone line at (810) 678-3565.  (Def. Mot. Ex. A, Interrog. Ans. 8).  By early September 2008, the calls were also being placed to Plaintiffs' cell phones.

On September 12, 2008, Mr. Pugliese called PRS from his cell phone in an attempt to speak with a Pamela Prescott and to cease the calls.  (Def. Mot. Ex. G. at 2, Plaintiffs' September collection notes).  On this same date, Plaintiff Pamela Pugliese (Martin's wife) called PRS and consented to calls being placed to her cellular phone: (248) 462-2666.  (P. Pugliese Dep. at 14).  On October 23, 2008,  Mr. Pugliese also called Defendant Sarah Duncan of PRS and left a message consenting to calls on his cell phone: (248) 219-1402. (Def. Mot. Ex. B at 12, Transcripts of recordings).

Plaintiffs never wrote to Defendants asking them to cease calling. (P. Pugliese Dep. at 15).  The challenged call period ends on or about February 26, 2009.  (Plaintiffs' call logs at 34).

Defendants now seek partial summary judgment on some of Plaintiffs' claims.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c)

---

[10]Calls in February 2009 are not specifically named in the complaint.

mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. Analysis

Defendants have filed two motions: a motion to strike and a motion for partial summary judgment. This Court first addresses Defendants' motion to strike because a decision on that motion will affect its decision on Defendants' more substantive motion for partial summary judgment.

### A. Defendants' Motion to Strike

Defendants' motion to strike concerns two exhibits attached to and in support of Plaintiffs' Response. Exhibit 1 consists of Plaintiffs' newly created call log (Ex. 1a,

Plaintiff's spreadsheet of PRS's telephone calls) and Mr. Pugliese's affidavit (Ex. 1B, Affidavit of Martin Pugliese) attesting to the authenticity of new call log. Exhibit 2 is an affidavit from Rachel Livingston, Martin Pugliese's stepdaughter and Pamela Pugliese's daughter.

### 1. Plaintiffs' Exhibit 1

Defendants argue that Plaintiffs' newly created call log (Plaintiffs' spreadsheet) is inadmissable because: (1) the documents used to create Exhibit 1 are not so voluminous as to require its creation; (2) Plaintiffs failed to make the Exhibit available to Defendants at a reasonable time and place; (3) Plaintiffs fail to provide a proper foundation for the Exhibit's admission into evidence; (4) Exhibit 1 is an inaccurate summary of Plaintiffs' call logs; and (5) the Exhibit contains inadmissable hearsay. The Court addresses each of these arguments, beginning with the first.

A summary of documents is admissible when those documents are deemed to be so voluminous that it would inconvenience the Court to examine them independently. *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998) (citing Fed. R. Evid. 1006). It is not required, however, that the documents be so voluminous that they would be literally impossible to examine without a summary. *Bray*, 139 F.3d at 1109 (citing *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979)).

Plaintiffs claim that Exhibit 1 is a new call log created in spread sheet form with the assistance of legal counsel. (Pls.' Resp. at 3). Plaintiffs also claim that they assembled this newly created call log because the sheer volume of calls and limited time did not allow them to cohesively and comprehensively assimilate all the information into one document

before this action was filed. (*Id.*)  Plaintiffs explain that they, "have worked with their legal counsel and have created and compiled a spread sheet which summarizes Mr. Pugliese's notes of these collection calls, which Marty [Mr. Pugliese] contemporaneously logged." (*Id.*)

Despite Plaintiffs' claims to the contrary, the new call log is not a more cohesive or summarized version of Plaintiffs' original call log.  Plaintiffs' original call log already adequately summarizes the notes and records kept by Plaintiffs detailing their relationship with PRS during the time period from June 2008 until February 2009.

Defendants next argue that this new call log was not made available for their examination until Plaintiffs produced it with their Response on May 4, 2010, and thus it violates Rule 1006 of the Federal Rules of Evidence. It is Plaintiffs' burden to make all documents readily available to Defendants for examination and/or copying at a reasonable time and place.  *See Bray*, 139 F.3d at 1109 (citing Fed. R. Evid. 1006); *See also Scales*, 594 F.2d at 562.  Due to Plaintiffs late production, Defendants persuasively argue that they were not given a reasonable amount of time to make copies and examine this newly created document.

Defendants also argue that the new call log lacks a proper foundation and thus should be stricken.  This Court agrees.  "In order to lay an proper foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation." *Bray*, 139 F.3d at 1110 (quoting *Scales*, 594 F.2d at 562-563).  There is no evidence (depositions, interrogatories, affidavit, etc.) from Plaintiffs detailing their supervision of its preparation.  Plaintiffs also fail to provide any case law supporting the admission of Exhibit 1 under these circumstances.

More importantly, Defendants argue that the information contained in Exhibit 1 is an inaccurate summary of the information contained in the underlying documents. "A summary document 'must be accurate and non-prejudicial.'" *Bray*, 139 F.3d at 1110 (quoting *Gomez v. Great Lakes Steel Div.*, *Nat'l Steel Corp.*, 803 F.2d 250, 257 (6th Cir. 1986)). A comparison of the original call log and the newly created one reveals numerous obvious discrepancies. There is a significant amount of data that has been changed or altered in the new call log. There are numbers and dates that do not match up. For example, a review of the July 26, 2008 entry reveals a discrepancy between the original and newly created call logs. Plaintiffs' original call log and Plaintiffs' July call notes (Defs.' Mot. Ex. D) show that the call on this date was from the number (877) 801-2498. Exhibit 1 shows that the call on this same date came from the number (866) 464-1013. The new call log contains several errors similar to this.

Finally, Defendants argue that Exhibit 1 contains inadmissable hearsay. Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "If the [proffered] comments are deemed hearsay, then the evidence could not be considered on summary judgment." *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003) (citing *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999)). Because Plaintiffs have not shown that the statements in Exhibit 1 are being introduced for a reason other than to prove their truth and for the reasons provided above, Plaintiffs' Exhibit 1 is stricken.

The Court now examines the admissibility of Plaintiffs' Response Exhibit 2.

### 2. Plaintiffs' Exhibit 2

Exhibit 2 is an affidavit from Rachel Livingston, the step daughter of Plaintiff Martin Pugliese and daughter of Plaintiff Pamela Pugliese. (Pls.' Resp. Ex. 2 at ¶ 1). Ms. Livingston claims that she was contacted by PRS in the summer of 2008; that PRS was attempting to collect on the debt owed by Mr. Pugliese; and that PRS was intimidating and aggressive in those collection efforts. (*Id.* at ¶¶ 2, 5). According to Mr. Pugliese's interrogatory answers, Rachel Livingston had only second hand knowledge of the facts and information surrounding the allegations in the complaint. (M. Pugliese Interrog. No. 8 at ¶ 5). More importantly, Rachel Livingston is not a named Plaintiff, and Plaintiffs have not asserted a claim against Defendants alleging that they disclosed Plaintiffs' debt to a third party. Plaintiffs cannot assert a new legal theory in response to Defendants' motion for summary judgment. *See Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). For these reasons, Plaintiffs' Exhibit 2 is also stricken, and Defendants' motion to strike is GRANTED in its entirety.

The Court now addresses Defendants' motion for partial summary judgment.

### B. Defendant's Motion for Partial Summary Judgment

The Court first addresses a phone number that Defendant PRS claims does not belong to it.

### 1. Phone Number (877) 801-2498

Plaintiffs allege that from June 2008 until February 2009, one of the numbers that frequently called them was (877) 801-2498. Plaintiffs attribute this number to PRS. PRS has denied ownership of this phone number, and Plaintiffs present no evidence

contracting that claim. (*See* Def. Mot. Ex. E, Defendants' Responses to Requests for Admission). PRS does concede that the following numbers belong to them:

(866) 464-1013
(800) 373-9358
(702) 489-3900
(800) 915-1016
(866) 302-1102
(800) 309-8000
(856) 770-9500
(866) 468-1090

(*See* Admission, Defs.' Ex. E).

Plaintiffs bear the burden of proof on their claim that (877) 801-2498 is attributable to PRS, but they have not met this burden. Plaintiffs rely solely on the newly created call log to assert that PRS is associated with (877) 801-2498. The original call log indicates no such reference. Plaintiffs have failed to subpoena data regarding the ownership of this number and provide no evidence that Defendants own or control this number. (*See* Pls.' Resp., p.11-2.) Plaintiffs cannot create a genuine issue of material fact by simply asserting conclusory statements that the Defendant could possibly control this number. *See Millsap v. CCB Credit Services, Inc.*, No. 07-11915, slip op. at 22 (finding that summary judgment is appropriate when the plaintiff fails to support claims with evidentiary support and relies solely on conclusory statements).

The Court next addresses Plaintiffs' claims for violation of the TCPA.

## 2. TCPA Claims

Defendants seek summary judgment on Plaintiffs' TCPA claims arguing that: (1) calls to Plaintiffs' residential telephone line using an artificial or prerecorded voice are exempt

under the TCPA; and (2) Plaintiffs gave Defendants prior express consent to contact them on their cellular phone lines. The Court begins with a discussion of the relevant sections of the TCPA and then discusses Defendants' arguments.

The Telephone Consumer Protection ACT (TCPA) was enacted into law on December 20, 1991 (Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991)), and is codified at 47 U.S.C. § 227, *et seq.* The TCPA was enacted in an effort to address a growing number of telephone marketing calls and certain telemarketing practices that Congress found to be an invasion of consumer privacy. In relevant part, the TCPA regulates the use of automated telephone equipment. An automatic telephone dialing system is defined as "equipment which has the capacity to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Plaintiffs allege that Defendants violated the TCPA by initiating telephone calls to Plaintiffs' residential and cellular phones using an automatic telephone dialing system without their consent. Section 227(b)(1) of the TCPA provides in pertinent part that:

> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
> > (A) to make any call (other than a call for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
> >
> > > (iii) to any telephone number assigned to a paging service,

> cellular telephone service,
> specialized mobile radio service, or
> other radio common carrier service,
> or any service for which the called
> party is charged for the call;--
>
> (B) to initiate any telephone call to any
> residential telephone line using an
> artificial or prerecorded voice to
> deliver a message without prior
> express consent of the called party,
> unless the call is initiated for
> emergency purposes or is exempted
> by rule or order by the Commission
> under paragraph (2)(B);

47 U.S.C. § 227(b)(1) (emphasis added).

Section 227(b)(2)(B) of the TCPA provides that the F.C.C. may exempt from coverage (1) calls that are not made for commercial purposes, and (2) calls made for commercial purposes where the Federal Communications Commission ("FCC") determines that the call: (a) will not adversely affect the privacy rights intended to be protected by the TCPA, and (b) does not include the transmission of any unsolicited advertisement.

### a. Calls made to Plaintiffs' residential line are not subject to the TCPA

Defendants argue that automated calls made to Plaintiffs' residential telephone line are exempt from the TCPA. Plaintiffs do not refute Defendants' claim. In accordance with its authority under the TCPA, the FCC has exempted from the requirements relating to calls to residential telephone lines calls that do "not include or introduce an unsolicited advertisement or constitute a telephone solicitation" and calls that are "made to any person with whom the caller has an established business relationship at the time the call is made."

47 C.F.R. § 64.1200(a)(2)(iii), (iv); 47 U.S.C. § 227(b)(2)(B); *See also Bates v. I.C. Systems*, *Inc.*, No. 09-CV-103A, 2009 WL 3459740, *1 (W.D. N.Y., Oct. 19, 2009) (observing that debt collection calls made to a residential line are exempt from the TCPA). For this reason, summary judgment is granted in Defendants' favor on Plaintiffs' TCPA claims arising from calls made to their residential line.

### b. Calls made to Plaintiffs' cellular telephones

To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: (1) a call was placed to a cell or wireless phone, (2) by the use of any automatic dialing system and/or leaving an artificial or prerecorded message, and (3) without prior consent of the recipient. 47 U.S.C. § 227(b)(1)(A). The burden of establishing prior consent is on the defendant. *See Pollock v. Bay Area Credit Service, LLC,* No. 08-61101-Civ., 2009 WL 2475167, **9-10 (S.D. Fla., Aug. 13, 2009). The F.C.C. stated in a 2008 declaratory ruling that, "the Commission [F.C.C.] determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'" 23 F.C.C.R. 559, 564.

It is undisputed that on September 12, 2008, Mrs. Pugliese gave PRS permission to call her cellular phone. It is also undisputed that on October 23, 2008, Mr. Pugliese left a message with PRS consenting to calls on his cell phone. (Tr. 10/23/2008 recorded call).

Plaintiffs contend that PRS called Mrs. Pugliese's cell phone prior to her consent. Specifically, they contend that on both June 12, 2008 and June 14, 2008, PRS called

Plaintiffs' cell using the number (866) 486-2121.[11] (*See* Plaintiffs' call logs)  Mrs. Pugliese's cellular phone records, however, do not show that she ever received these calls. (Defs.' Resp. Ex. C, Mrs. Pugliese's cell phone records).  In fact, her cell phone records show that she was never called or contacted by PRS. ( *Id.*)  Plaintiffs further contend, and the records show, that Mrs. Pugliese received calls from phone number (877) 801-2498 several times prior to her consent. As discussed earlier, this number does not belong to PRS, and Plaintiffs have not presented any evidence to the contrary.  Accordingly, summary judgment is granted in Defendants' favor as to Mrs. Pugliese's TCPA claims.

On October 23, 2008, Mr. Pugliese consented to calls on his cellular phone after he left a message with PRS.  Mr. Pugliese's cellular phone records indicate that he received approximately six calls from the Defendant between June 2008 and February 2009. (*See* Def. Rep. Ex. D, Mr. Pugliese's cell phone records).  Defendants admit that Mr. Pugliese received calls on his cellular phone from PRS on August 11, 2008 and August 25, 2008. (Defs.' Reply at 5-6).  These calls were made to Mr. Pugliese's cellular phone two months before he gave consent. Plaintiffs' call logs, however, do not indicate whether these calls came from an automated dialing system or if the messages left on the voice mail were prerecorded messages. Plaintiffs have not presented any evidence that these calls were made by automated dialing systems.  Accordingly, as to Mr. Pugliese's claimed violation of 47  U.S.C. 227 (b)(1)(A)(iii), Defendants' motion for summary judgment is granted.

The Court now addresses Plaintiffs' Fair Debt Collection Practices Act claims.

---

[11]Plaintiffs' call logs indicate generally that PRS called from the number (866) 486-2121 and that Plaintiffs had conversations with PRS employees from this number. Defendants do not deny ownership of this number.

**3.      FDCPA Claims**

15 U.S.C. § 1692 (FDCPA) addresses the use of abusive, deceptive, and unfair debt collection practices.  Specifically, Section 1692c concerns communication methods in connection with debt collection; Section 1692d covers abusive and harassing conduct deemed unlawful in the collection of a debt; Section 1692e details the use of false, deceptive and misleading representation that may  not be used by debt collectors; and Section 1692f addresses specific unfair and unconscionable means a debt collector may not employ to collect on a debt.

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not completely disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA broadly prohibits debt collectors from engaging in harassing, oppressive, or abusive conduct, from using false, deceptive, and misleading representations, and from collecting debts through unfair or unconscionable means.  *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

The Sixth Circuit has observed that FDCPA violations should be analyzed under a "least sophisticated consumer" standard. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992).  This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999).

Plaintiffs allege that Defendants' conduct violated § 1692d(5) of the FDCPA. This

subsection provides in pertinent part:

> §1692d.   A debt collector may not engage in any
> conduct the natural consequence of which is to
> harass, oppress, or abuse any person in
> connection with the collection of a debt. Without
> limiting the general application of the foregoing,
> the following conduct is a violation of this section:
>
> * * *
>
> (5) Causing a telephone to ring or engaging
> any person in telephone conversation
> repeatedly or continuously <u>with intent to
> annoy, abuse, or harass</u> any person at the
> called number.

15 U.S.C. § 1692d(5) (emphasis added).

To survive summary judgment under Federal Rule of Civil 56(e), the opposing party "may not rely merely on allegations… in its own pleading; rather it must set out specific facts showing a genuine issue for trial." *See Saltzman v. I.C. System, Inc.*, No. 09-10096, 2009 WL 3190359, *7 (E.D. Mich. 2009)(holding that the defendant was entitled to summary judgment on plaintiff's FDCPA claims because plaintiff relied on mere allegations without providing any evidence that defendant placed calls with the intent to annoy, harass, or abuse). To determine whether Defendants' calls amount to harassment, annoyance or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct. *See Akalwaldi v. Risk Management Alternatives, Inc.*, 336 F. Supp.2d 492, 505 (D. Md. 2004); *Udell v. Kansas Counselors, Inc.*, 313 F. Supp.2d 1135, 1143-44 (D. Kan. 2004). Plaintiffs carry the burden of showing that Defendants' calls were in violation of 15 U.S.C. § 1692d(5). *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp.2d 1117, 1124 (D. Nev.2008).

Plaintiffs allege that the telephone calls placed to their residential and cellular telephones from June

2008 until February 2009 violated the FDCPA because they were oppressive, harassing,

and abusive.  Specifically, Plaintiffs allege that: (1) over an 8 month period, Defendants

made  approximately 350 calls in an attempt to collect on their debt; (2) Defendants

contacted Plaintiffs several times every day; (3) Defendants continued to call Plaintiffs

constantly after Plaintiffs repeatedly asked Defendants to cease; and (4) Defendants were

rude, abusive and continually harassed Plaintiffs through repeated calls. (2d Am. Compl.

¶¶ 33, 44, 46-7, 54-7, 62, 64, 77-8, 87, 97, 104, 118, 133, 139, 141-2, 172, 184, 211, 228,

230-4.)

Along with the allegations in their complaint, Plaintiffs provide monthly, contemporaneous notes that

detail the date, time, and content of calls Defendants allegedly made during the relevant

eight month time period.  Plaintiffs also present a "call log" of approximately 300 calls made

to their residential and cellular telephones. This call log documents each call made,

provides the number from which the call was made, and compresses Plaintiffs' monthly

notes into a single, less-voluminous document.  (Plaintiffs' call log).  Plaintiffs' deposition

testimony provides further evidence of their distress and annoyance as a result of

Defendants' attempts to collect on the debt. (M. Pugliese Dep. at 22-23, 25, 55, 86-88,

108).

Defendants argue that their actions in placing calls to Plaintiffs do not constitute a violation of the

FDCPA. Debt collectors do not necessarily engage in harassment by placing one or two

unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is

unaccompanied by any oppressive conduct (threatening messages). *Saltzman*, No. 09-

10096 at *7 (quoting *Millsap*, No.07-11915, Opin. at 14-15 and holding that 60 calls in one month with only ten calls resulting in actual contact did not violate the FDCPA). Defendants placed approximately 350 calls over an eight-month period, but only about ten calls resulted in actual conversations. Plaintiffs stated that they did not answer their phone because they recognized numbers from PRS on their caller ID. (M. Pugliese Dep. at 54-55). In *Martin v. Select Portfolio Serving Holding Corp*., 2008 WL 618788, **6-7 (S.D. Ohio, March 3, 2008), the court observed that a log of numerous collection calls is not evidence of intent to annoy, abuse, or harass. *Martin* goes further to explain that, "any call from a debt collector may be presumed unwelcome, but that alone is insufficient to constitute a violation of the FDCPA. Plaintiffs' recorded transcripts display that while Mr. and Mrs. Pugliese were annoyed with PRS, the debt collectors never once engaged in conversation that could be considered as intentional harassment or abuse. (*See* Plaintiffs' Transcripts of Recordings). Defendants argue that they were only making legitimate, while persistent efforts to reach Plaintiff, and further argue that this alone is insufficient to violate the FDCPA. This Court agrees.

Plaintiffs have not met their burden of showing that a genuine issue of material fact remains on their FDCPA claims under § 1692d. Despite Plaintiffs' extensive evidence documenting the number of calls made, there is no evidence to demonstrate that Defendants acted intentionally to annoy, harass, or abuse them. Accordingly, summary judgment is granted to Defendants on Plaintiffs' claims brought under § 1692d of the FDCPA.

The Court addresses Plaintiffs' claims under Michigan Law.

### 4. MCPA and Intentional Interference of Emotional Distress Claims

Plaintiffs concede that Defendants are entitled to summary judgment on their MCPA claims and claims for intentional interference of emotional distress.

The Court now addresses Plaintiffs' claims for actual damages under the TCPA and FDCPA.

### 5.     Actual Damages Claim

Plaintiffs seek actual damages under both the TCPA and the FDCPA.   Actual damages are defined as emotional pain and suffering, humiliation, lost credit opportunities and damage to one's reputation for creditworthiness.   *See Bach v. First Union National Bank*, 149 Fed.Appx. 354, 2005 WL 2009272, *4 (6th Cir. Aug. 22, 2005)(defining actual damages in an action under the Fair Credit Reporting Act (FCRA)).

Under § 227(b)(1)(3) of the TCPA, damages consist of: (1) actual monetary loss or $500 in  statutory damages for each such violation, whichever is greater.   In light of this Court's decision to dismiss the Plaintiffs' TCPA claims, Plaintiffs are not entitled to any damages under the TCPA.   This leaves Plaintiffs' claim for actual damages under the FDCPA.

Section 1692k(a) of the FDCPA similarly allows an individual to bring an action seeking either actual or statutory damages. Section 1692k(a)(1) allows recovery for any actual damages sustained and §1692k(a)(2)(A) allows an individual to recover for additional damages as the court may allow, but not to exceed $1,000. Section 1692b explains the factors for the court to consider in determining the amount of liability: (1) the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. Section 1692c states that a debt

collector may only be liable under such an action if their violation was intentional and did not result from a bona fide error.

Plaintiffs are claiming that they suffered actual damages in the form of emotional distress, mental anguish, outrage, embarrassment, and humiliation as a result of Defendants' calls.

Defendants argue that because Plaintiff Martin Pugliese invoked the psychotherapist-patient privilege and refused to release the records of his treating psychologist Dr. Corina Lazur, Plaintiffs are now precluded from using these records as evidence of damages. The United States Supreme Court recognized a psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). The Sixth Circuit acknowledges this in *United States v. Hayes*, 227 F.3d 578, 581-82 (6th Cir. 2000). In the present case, Plaintiff Martin Pugliese has invoked the privilege in regards to his therapeutic history with Dr. Lazar. This precludes Dr. Lazur from testifying about Mr. Pugliese's present and past health conditions. *See Adams v. Ardcor*, 196 F.R.D. 339, 342 (E.D. Wis. 2000)(holding that one cannot introduce testimony of a psychotherapist in support of their emotional distress claims while seeking to use the privilege to prevent discovery into previous psychological problems); *See also Vann v. Lone Star Steakhouse & Saloon of Springfield, Inc.*, 967 F. Supp.2d 346, 349-350 (C.D. Ill. 1997)(observing that in many decisions post-dating *Jaffee*, courts have recognized that the privilege is waived implicitly when the plaintiff's mental condition is made an issue in the litigation). Dr. Lazar cannot be used to establish any link between Mr. Pugliese's emotional or mental health and the calls placed by Defendants. *See McCollough v. Johsnson, Rodenberg & Lauinger*, 645 F. Supp.2d 917, 928 (D. Mont.

2009)(observing that a doctor's testimony is critically relevant to a claim for emotional damages).

Plaintiffs rely solely on their own testimony and evidence in support of their claims for actual damages. This testimony consists of mere conclusory statements. Mrs. Pugliese stated simply that she was worried about her husband and that she could not leave him when asked if she was suffering from any sort of symptoms due to the Defendants calls. (*See* Dep. Trans. of Mrs. Pugliese, p.17-8.) When Mr. Pugliese was asked in his deposition what sort of mental or emotional problems he was suffering from, he answered, "I don't know. I don't have any way of knowing that." (*See* Dep. Trans. of Mr. Pugliese, p.80.). These statements are insufficient to prove a claim for actual damages. *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp.2d 1069, 1078-1080 (E.D. Cal. 2007).

Because Plaintiffs have invoked the psychotherapist-patient privilege and have not produced admissible evidence of their emotional damages, Defendants are granted summary judgment on Plaintiffs' claims for actual damages.

Finally, the Court addresses Plaintiffs' claims alleging violations of §§ 1692d, 1692e, and 1692f of the FDCPA for specific calls made in July, September, and October of 2008.

### 6.    FCDPA Claims Arising From Specific Calls

### a.    Calls on July 2, July 5, July 13, and July 20, 2008

Defendants argue that Plaintiffs have not shown that PRS made harassing phone calls to them on July 2, July 5, July 13, and July 20, 2008. Plaintiffs' compiled notes from July 2008 indicate that these calls came from the telephone number (877) 801-2498. As previously discussed, PRS asserts that this number does not belong to it and Plaintiffs have

failed to present evidence refuting this assertion. Accordingly, Defendants are granted summary judgment on all claims arising from calls made on July 2, July 5, July 13, and July 20, 2008.

**b.      Call on July 25, 2008**

Plaintiffs allege that on July 25, 2008, about 11:05 A.M., a debt collector from PRS named Charlene called their home phone and was rude and harassing to Mrs. Pugliese. (*See* Def. Mot. Ex. D at 7, Plaintiffs' July call notes). The recorded transcript from this day refutes Mrs. Pugliese's allegation. (*See* Transcripts of recordings). Accordingly, Defendants are granted summary judgment as to all FDCPA claims arising from this July 25, 2008 call.

**c.      Call on September 12, 2008**

Plaintiffs likewise fail to provide any evidence supporting their claim that the Defendants' September 12, 2008 call was harassing, annoying, or abusive. Plaintiffs' notes of compiled calls for the month of September merely indicate that on September 12, 2008 the caller wanted a full payment and that Mr. Pugliese explained his financial situation to her. (*See* Plaintiffs' September collection calls.) Accordingly, Defendants are granted summary judgment on all FDCPA claims arising from this September 12, 2008 call.

**d.      Call on September 29, 2008**

Plaintiffs' claim -- that Defendants' call made on September 29, 2008 was harassing, annoying, or abusive -- similarly fails. Plaintiffs' own recording demonstrates that this call was not harassing, annoying, or abusive. (*See* Transcripts of recordings) Furthermore, Plaintiffs have no record of this September 29, 2008 call in their September collection

notes. Accordingly, Defendants are granted summary judgment on all FDCPA claims arising from the September 29, 2008 call.

### e. Call on October 23, 2008

Plaintiffs also fail to provide any evidence that Defendants' call made on October 23, 2008 was harassing, annoying, or abusive. Again, Plaintiffs own notes and recordings demonstrate that this call was not harassing, annoying, or abusive. (*See* Transcripts of recordings at 1-7). Accordingly, Defendants are granted summary judgment on all FDCPA claims arising from this October 23, 2008 call.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to strike is GRANTED and Defendants' motion for partial summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 29, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager